DEAN S. MCKNIGHT,

       Plaintiff,

                                   Civil Action 2:18-cv-1025
                                   Judge James L. Graham
      v.                           Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Dean S. McKnight ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), Plaintiff's Motion to Remand under Sentence Six of 42 U.S.C. § 405(g) ("Motion to Remand") (ECF No. 12), the Commissioner's Response in Opposition (ECF No. 17), Plaintiff's Reply (ECF No. 18), and the administrative record (ECF No. 6). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** (ECF No. 11), that his Motion to Remand be **DENIED** (ECF No. 12), and that the Commissioner's decision be **AFFIRMED**.

## I.     BACKGROUND

Plaintiff protectively filed his application for a period of disability and disability insurance benefits on May 7, 2015. In his application, Plaintiff alleged a disability onset of

September 1, 2014.   Plaintiff's application was denied initially on July 21, 2015, and upon

reconsideration on September 15, 2015.   Plaintiff sought a hearing before an administrative law

judge.   Administrative Law Judge Timothy Gates (the "ALJ") held a hearing on April 14, 2017,

at which Plaintiff, represented by counsel, appeared and testified.   Vocational expert Teresa L.

Trent (the "VE") also appeared and testified at the hearing.   On September 13, 2017, the ALJ

issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security

Act.

Plaintiff requested that the Appeals Council review the ALJ's decision.   He submitted

additional evidence to the Appeals Council, including a Compensation and Pension Examination

("C&P Examination"), which was conducted by James Reardon, Ph.D., on August 15, 2016, as

part of Plaintiff's Veterans Affairs' claim.[1]   (R. at 219-27.)   The Appeals Council declined to

consider the C&P Examination, finding the "evidence does not show a reasonable probability

that it would change the outcome of the decision."   (R. at 2.)   On July 11, 2018, the Appeals

Council denied Plaintiff's request for review and adopted the ALJ's decision as the

Commissioner's final decision.   Plaintiff then timely commenced the instant action.

In his Statement of Specific Errors (ECF No. 11), Plaintiff contends that the ALJ erred in

assessing the opinion of his treating psychiatrist, Matthew Stevenson, M.D.   Plaintiff also filed

a Motion to Remand, asking the Court to remand this matter under Sentence Six of 42 U.S.C. §

405(g).   (ECF No. 12.)   More specifically, Plaintiff contends that the C&P Examination should

have been considered by the Appeals Council because it was new and material evidence.   He

---

1 Plaintiff submitted other additional evidence to the Appeals Council, as well, but it is not at
issue in this appeal.

also asserts that he had good cause for failing to present the C&P Examination before the ALJ rendered his decision.

## II.    RELEVANT MEDICAL EVIDENCE[2]

### A.    Veterans Affairs Medical Records

Plaintiff primarily received treatment from the United States Department of Veterans Affairs (the "VA").

On May 23, 2016, Matthew Stevenson, M.D., wrote a letter and completed a medical source statement regarding Plaintiff's mental conditions.   (R. at 728, 819, 825-28.)   In his letter, Dr. Stevenson stated that Plaintiff has been under his care since March 2009 and that he has been diagnosed with Dysthymia and post-traumatic stress disorder ("PTSD") and prescribed medication.   (R. at 819.)   Dr. Stevenson further stated:

> [Plaintiff] recently started a program of psychotherapy where he was diagnosed with Generalized Anxiety Disorder, panic attack specifier and Major Depressive Disorder, recurrent with anxious distress.   He has been engaging in group psychotherapy in addition to medication management with limited benefit at this point.   He continues to complain of depressed and irritable mood, poor sleep, and anxiety.   He has been service connected and receives VA benefits for his main financial support.   He has made multiple attempts at different jobs, but has consistently been unable to sustain employment.   It is my opinion that the patient has not had significant improvement with treatment that he would be able to sustain gainful employment.

(R. at 819.)

Dr. Stevenson also completed a "Medical Source Statement As To Ability To Perform Work Related Activities (Mental)" on Plaintiff's behalf.   (R. at 825-28.)   Dr. Stevenson opined

---

2  In his Statement of Errors, Plaintiff does not challenge the Commissioner's findings with respect to his alleged physical impairments.   Accordingly, the undersigned will focus its review of the medical evidence on Plaintiff's alleged non-exertional impairments.

that Plaintiff is mildly limited in his ability to relate to the general public, maintain socially

appropriate behavior, and maintain personal appearance and hygiene.   He found that Plaintiff is

moderately limited in his ability to remember locations, workday procedures, and instructions,

and to be aware of normal hazards and to take necessary precautions.   (*Id.*)   Dr. Stevenson

further opined that Plaintiff is markedly limited in his ability to accept instruction from or

respond appropriately to criticism from supervisors or superiors; to work in coordination with or

in proximity to others without distracting them or exhibiting behavioral extremes; to perform and

complete work tasks in a normal work day or week at a consistent pace; to work in cooperation

with or in proximity to others without being distracted by them; to process subjective

information accurately; to use appropriate judgment; to carry through instructions and complete

tasks independently; and to respond appropriately to changes in a work setting.   (*Id.*)   Dr.

Stevenson found that Plaintiff is extremely limited in his ability to respond appropriately to co-

workers or peers; to maintain attention and concentration for more than brief periods of time; to

perform at production levels expected by most employers; to behave predictably, reliably and in

an emotionally stable manner; and to tolerate customary work pressures.   (*Id.*)

Dr. Stevenson opined that Plaintiff is likely to have unscheduled absences from work

occurring 5 or more days per month due to his conditions, and that his condition is likely to

deteriorate if he is placed under stress, particularly the stress of full-time employment.   (R. at

827.)   Dr. Stevenson explained that this opinion is based on Plaintiff's "interpersonal and mood

symptoms" and the fact that Plaintiff has "failed multiple work attempts."   (*Id.*)

On May 31, 2016, clinical psychologist, Nicole L. Jackson, Ph.D., found that "[t]here is

no indication based on [her] clinical judgment at this time that the [Plaintiff] is unemployable."

(R. at 717.)

On November 17, 2016, the VA issued a decision finding Plaintiff individually unemployable. (R. at 846-50.)

**B.      Additional Evidence Submitted to Appeals Council**

After the ALJ's September 13, 2017 decision, Plaintiff submitted additional evidence to the Appeals Council. At issue in this appeal is the C&P Examination that was conducted as part of Plaintiff's VA claim. Plaintiff was examined by James Reardon, Ph.D., on August 15, 2016. Dr. Reardon diagnosed Plaintiff with post traumatic stress disorder, chronic, moderate to severe; persistent depressive disorder (dysthymia); and alcohol use disorder, mild. (R. at 220.) Dr. Reardon noted that Plaintiff "has had significant issues with occupational and educational functioning," and that "[h]e has been fired from most of his jobs because of interpersonal issues and explosive/anger management issues." (R. at 222.) Dr. Reardon noted that Plaintiff suffers from the following symptoms: depressed mood; anxiety; suspiciousness; panic attacks more than once a week; chronic sleep impairment; mild memory loss such as forgetting names, directions, or recent events; flattened affect; impaired judgment; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships; difficulty in adapting to stressful circumstances, including work or a work-like setting; and suicidal ideation. (R. at 224-25.)

Dr. Reardon noted that Plaintiff was "pretty agitated" and extremely anxious when he arrived at the examination. (*Id.*) Dr. Reardon further noted that Plaintiff calmed down and was "adequately cooperative with the evaluation and, in fact, was somewhat apologetic by the end of the examination." (*Id.*) Dr. Reardon further explained Plaintiff's behavior during the

examination as follows:

> The Vet did become tearful and pretty upset part way through the examination when we were talking about some of the difficulties he has had in job situations and just in general. He also began to hyperventilate at a couple of different points in the examination. He also broke into a pretty profuse state of sweating near the end of the examination and appeared to be laboring significantly with regard to his breathing and significant anxiety symptoms. He was encouraged to just breath nice and deep and slow, and he was able to get himself calmed down, although the perspiration on his face was significant enough that I had to get a paper towel for him.

(R. at 225.)

Dr. Reardon noted that Plaintiff was currently taking PTSD and Anger Management Classes through the VA, and that he misses those classes sometimes. (R. at 225.) Dr. Reardon found Plaintiff to be a "very credible" informant and noted that "[t]he anxiety symptoms and especially the physiological anxiety symptoms that he manifested were significant." (R. at 226.) He found that Plaintiff "is struggling significantly and is trying to respond to both the treatment and medication regimen that he is on," and that he does "pretty well" on a good day and "struggles significantly" on a bad day. (*Id.*)

Dr. Reardon concluded as follows:

> I believe, based on this examination, that the Veteran's ability to function is significantly deficient in most areas of functioning, including work, family relations, judgment, thinking, and mood. He manifested significant anxiety and depressive symptoms during this examination and I would agree with Dr. Stevenson's opinions with regard to his ability to function in a substantial, gainful employment environment. He would be able to function reasonably well at times, but at other times he would not only struggle to function himself but he would have significant limitations in terms of his ability to handle the social, emotional, and interpersonal aspects of an employment situation and in order to handle the stress and pressure of the day to day responsibilities of a work environment. These impairments would significantly negatively impact his ability to sustain occupational or employment behaviors.

> The opinions stated in this report are based on my review of the Veteran's records

6

(over 2,000 pages) as well as my examination of the Veteran.   They are also based on my education, background, training, and experience as a psychologist who has been in practice for more than 39 years and whose practice has specialized in PTSD for more than 32 years.

(R. at 227.)

## III.    THE ADMINISTRATIVE DECISION

On September 13, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.   (R. at 236-45.)   At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2014, the alleged onset date.   (*Id.* at 238.)   At step two, the ALJ found that Plaintiff had the severe impairments of bilateral carpal tunnel syndrome with right upper extremity release; cervical degenerative disc disease; degenerative joint disease of the left

---

3.   Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.   *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.   Is the claimant engaged in substantial gainful activity?

2.   Does the claimant suffer from one or more severe impairments?

3.   Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.   Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.   Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

shoulder; diabetes; depression; anxiety; post-traumatic stress disorder ("PTSD"); and dysthymic

disorder.   (*Id.* at 238-39.)   At step three of the sequential process, the ALJ found that Plaintiff

did not have an impairment or combination of impairments that met or medically equaled one of

the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (*Id.* at 239-40.)

The ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform light work as defined in 20
> CFR 404.1567(b) except he could occasionally reach overhead, bilaterally.   He
> could frequently handle and finger bilaterally.   There can be no demands for fast
> pace, and the work environment must be static with infrequent changes.

(*Id.* at 240.)   In assessing Plaintiff's mental RFC, the ALJ assigned "significant" weight to the

state-agency mental consultants; "little" weight to the Department of Veterans Affairs' finding

that Plaintiff is variably disabled; "partial" weight to the opinion of Nicole Jackson, Ph.D.; and

"little" weight to the opinion of Matthew Stevenson, M.D.   (*Id.* at 242.)   The ALJ also found

that Plaintiff's subjective complaints were "generally inconsistent with the record as a whole."

(*Id.* at 243.)

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.

(*Id*. at 243.)   At step five, relying on the VE's testimony, the ALJ concluded that Plaintiff could

perform jobs existing in significant numbers in the national economy.   (*Id*. at 244.)   The ALJ

therefore found that Plaintiff was not disabled under the Social Security Act.   (*Id*. at 244-45.)

## IV.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'"   *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

# V.    ANALYSIS

As set forth above, Plaintiff filed a Statement of Specific Errors (ECF No. 11) and a Motion to Remand Under 42 U.S.C. § 405(g), Sentence Six (ECF No. 12).   In his Statement of Errors, Plaintiff maintains that the ALJ failed to properly evaluate the opinion of his treating psychiatrist, Dr. Stevenson.   In his Motion to Remand, he asserts that the Appeals Council improperly failed to consider the C&P Examination by Dr. Reardon, which he submitted to the Appeals Council after the ALJ rendered his decision.   The undersigned considers Plaintiff's arguments in turn.

## A.    The ALJ's Consideration of Dr. Stevenson's Opinion

Plaintiff asserts that the ALJ erred in failing to provide controlling weight to Dr. Stevenson's opinion or to provide good reasons for discounting it.   (Pl.'s Statement of Errors at 7, ECF No. 11.)   The Commissioner counters that the ALJ provided sound reasoning supported by substantial evidence for discounting Dr. Stevenson's opinion.   The undersigned agrees with the Commissioner and finds Plaintiff's Statement of Error to be without merit.

The ALJ must consider all medical opinions that he receives in evaluating a claimant's case.   20 C.F.R. § 416.927(c).   The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis."   20 C.F.R. § 416.927(a)(1).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical

evidence that cannot be obtained from the objective medical filings alone . . ."   20 C.F.R. §

416.927(c)(2); *Blakley*, 581 F.3d at 408.   If the treating physician's opinion is "well-supported

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling

weight."   20 C.F.R. § 404.1527(c)(2).

     If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ

must meet certain procedural requirements.   *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544

(6th Cir. 2004).   Specifically, if an ALJ does not give a treating source's opinion controlling

weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment
> relationship and the frequency of examination, the nature and extent of the
> treatment relationship, supportability of the opinion, consistency of the opinion
> with the record as a whole, and the specialization of the treating source-in
> determining what weight to give the opinion.

*Id*.   Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of

determination or decision for the weight [the ALJ] give[s] your treating source's opinion."   20

C.F.R. § 416.927(c)(2).   Accordingly, the ALJ's reasoning "must be sufficiently specific to

make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight."   *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x

543, 550 (6th Cir. 2010) (internal quotation omitted).   The United States Court of Appeals for

the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the
> disposition of their cases," particularly in situations where a claimant knows that
> his physician has deemed him disabled and therefore "might be especially
> bewildered when told by an administrative bureaucracy that she is not, unless some
> reason for the agency's decision is supplied."   *Snell v. Apfel*, 177 F.3d 128, 134
> (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating

physician rule and permits meaningful review of the ALJ's application of the rule.
*See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

As discussed above, the ALJ assigned "little weight" to the opinion of Dr. Stevenson. Although Plaintiff maintains that the ALJ failed to give good reasons for assigning "little weight" to Dr. Stevenson's opinion, the ALJ provided the following explanation of how he arrived at his determination:

> The undersigned gives little weight to the opinion of Matthew Stevenson, M.D., who opined the claimant cannot work, with a listing-level limitations (Ex. 4F/1-2; 5F; 6F). At the outset, the issue of disability is one reserved to the Commissioner. Additionally, the record is inconsistent with this opinion, including a good mood and affect, appropriate dress and grooming, appropriate thought content and processes, no hallucinations, good rapport, normal speech, linear thought process, and good judgment. Finally, his own treatment notes support a lesser degree of

severity, as the claimant reported nightmares, but no "monster" nightmares (Ex. 3F/118).

(R. at 242-43.)

The undersigned finds no error with the ALJ's consideration and weighing of Dr. Stevenson's opinion. The ALJ articulated the weight he afforded Dr. Stevenson's opinion and properly declined to afford it controlling weight on the ground that it was inconsistent with the record. *See* 20 C.F.R. § 404.1527(c)(2) (identifying "supportability" and "consistency" with the record as a whole as relevant considerations when evaluating a treating physician's opinion); *Blakely*, 581 F.3d at 406 (quoting SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)) ("'[I]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if . . . it is inconsistent with the other substantial evidence in the case record.'"). The ALJ also properly rejected Dr. Stevenson's opinion that Plaintiff is unable to work because such a determination is reserved to the Commissioner. *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (explaining that "the conclusion of disability is reserved to the [Commissioner]"). Although the ALJ will consider opinions of physicians "on the nature and severity of [a claimant's] impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass*, 499 F.3d at 511.

Furthermore, substantial evidence supports the ALJ's conclusion that Dr. Stevenson's opinion is inconsistent with the record. In considering Plaintiff's mental impairments, the ALJ stated that "the record indicates that Plaintiff complained of depression, anxiety, nightmares, variable mood swings and sleep, interpersonal difficulties, ang[er], panic attacks, and frustration." (R. at 241 (citing R. at 518, 524, 540, 551, 576, 693, 715, 718, 743, 756, 778, 796, 807, 822).) The ALJ found that "despite these allegations, the claimant was noted to have a

13

good mood and affect, appropriate dress and grooming, appropriate thought content and processes, no hallucinations, good rapport, normal speech, linear thought process, and good judgment." (R. at 241.) (*See, e.g.*, R. at 525, 541-42, 546-47, 557, 569-70, 693, 702, 715-16, 718, 724, 726, 729, 741, 743, 746, 753-54, 769, 774, 791-92, 796-97, 799, 808, 811, 821, 940.) The ALJ also considered that Plaintiff was prescribed medication for his symptoms but admitted instances of non-compliance, (R. at 242 (citing R. at 524, 798)), and that Plaintiff did not have any inpatient psychiatric hospitalizations during the relevant period, (R. at 242).

Additionally, the ALJ considered the other medical source opinions in the record, which were not nearly as extreme as Dr. Stevenson's opinion. The ALJ gave "partial" weight to VA psychologist Dr. Jackson's opinion that there was nothing in her judgment that would render Plaintiff unemployable. (R. at 242.) The ALJ found that although Dr. Jackson failed to explain her opinion and touched on the issue of disability itself, the "overarching thrust of [her] opinion is consistent with the objective evidence." (R. at 242.) The ALJ also assigned "significant" weight to the state-agency psychologist's opinion that Plaintiff "could work in a job that requires little to no demand for speed, with infrequent changes." (R. at 242 (citing R. at 301-11, 313-23).) The ALJ noted that although the state-agency consultants did not review the full record or examine Plaintiff, their opinions are "generally consistent with the record as a whole. . . while also considering [Plaintiff's] less optimal findings, including pressured speech, dysphoric mood, and anxious affect." (R. at 242.) Thus, the degree of impairment Dr. Stevenson assessed is more extreme than that offered by any of the other medical sources.

The ALJ also reasonably discounted Dr. Stevenson's opinion because his treatment notes support a lesser degree of severity. Internal inconsistencies constitute good reason for

discrediting a treating source's opinion. *See Ledford v. Astrue*, 311 F. App'x 746, 754 (6th Cir. 2008) (identifying internal inconsistencies as a proper basis for discrediting medical opinions). Here, substantial evidence supports the ALJ's conclusion that Dr. Stevenson's opinion is inconsistent with his treatment notes, which generally demonstrate mild findings. (*See e.g.*, R. at 726 (noting good rapport; appropriate dress and grooming; orientation to person, place, and time; euthymic mood; anxious affect; rapid, but not pressured speech; appropriate thought content and process; no hallucinations or delusions; and no homicidal or suicidal ideations); (*see also* R. at 243 (citing R. at 725) (noting that Plaintiff "denies recent 'monster nightmares,'" although he reported still having bad dreams at times).)

Notably, in his Motion to Remand, Plaintiff himself acknowledges the lack of mental health evidence in the record supporting Dr. Stevenson's opinions, and concedes that "[based on the record available to the ALJ," his "interpretation of the medical record would be reasonable." (Pl.'s Mot. to Remand at 9-10, ECF No. 12.) Based on the foregoing, the undersigned finds that the ALJ reasonably discounted Dr. Stevenson's opinion because it was inconsistent with the record evidence, including his own treatment notes. *See Blakley*, 581 F.3d at 406 (quoting SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)) ("'[I]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if . . . it is inconsistent the with other substantial evidence in the case record.'").

Plaintiff's arguments to the contrary lack merit. Plaintiff asserts that the ALJ's analysis fails to consider that his mental health condition tends to fluctuate. (Pl.'s Statement of Errors at 9, ECF No. 11 (citing R. at 527-28).) Plaintiff contends that because his condition fluctuates, the existence of conflicting treatment notes does not support the ALJ's decision. (Pl.'s

15

Statement of Errors at 9, ECF No. 11.)   Plaintiff points to a note from Dr. Stevenson dated July

14, 2014, to show that his mental conditions fluctuate.   (*Id.* (citing R. at 486).)   That note

provides that Plaintiff "would need time off during exacerbation of his illness to allow for med

adjustments and/or improvement over time," and was written before the alleged onset date of

Plaintiff's disability.   (R. at 486.)   Nothing in Dr. Stevenson's May 2016 letter or medical

opinion refers to the alleged "fluctuating" nature of Plaintiff's condition.   Even if it did, the ALJ

considered both the normal and abnormal mental findings when weighing the record evidence.

Indeed, the ALJ specifically considered that the record contains "less optimal findings," such as

"rapid speech, an anxious affect, and a dysphoric mood, with pressured speech."   (R. at 242

(citing R. at 519, 525, 541-42, 557, 569-70, 693, 702, 715, 718, 726, 746, 749, 791, 799, 808,

821, 830).)   The ALJ also considered Plaintiff's allegations regarding his symptoms (R. at 241),

and that Plaintiff was referred for anger management counselling (R. at 242).   Moreover, an

ALJ is not required to "discuss every piece of evidence in the record to substantiate [his]

decision," *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citations

omitted), or "make explicit credibility findings as to each bit of conflicting testimony, so long as

his factual findings as a whole show that he implicitly resolved such conflicts," *Kornecky v.

Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (citations omitted).).   Here, the

ALJ's factual findings as a whole show that he weighed both the abnormal and normal findings

in considering Plaintiff's impairments and in weighing Dr. Stevenson's opinion.   The ALJ's

findings were within the permissible "zone of choice" and the undersigned will not re-weigh the

evidence.   *See Blakley*, 581 F.3d at 406; *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.

1986) ("The substantial-evidence standard allows considerable latitude to administrative decision

makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In summary, the undersigned concludes that the ALJ provided good reasons, supported by substantial evidence, for discrediting the opinion of Dr. Stevenson. It is therefore **RECOMMENDED** that Plaintiff's contention of error be **OVERRULED**.

## B.    Evidence Submitted to the Appeals Council

Plaintiff requests that the Court remand this matter under Sentence Six of 42 U.S.C. § 405(g) for consideration of additional evidence. Plaintiff contends that the C&P Examination by Dr. Reardon is "new" and "material" evidence that was not submitted to the ALJ for "good cause." (Pl.'s Mot. to Remand at 5, ECF No. 12.) He contends that, although the C&P Examination existed prior to the ALJ's decision, it was not available to him until after the decision was rendered. (*Id.*) He further argues that the C&P Examination is "material" because it could "possibly alter[ ] the outcome of the case." (*Id.*)

Sentence six of 42 U.S.C. § 405(g) provides:

> The Court may…remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding…

42. U.S.C. § 405(g). The Sixth Circuit further defined the requirements that elements be "new," "material," and that the plaintiff show "good cause" as follows:

> For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.' ... Such evidence is 'material' only if there is 'a reasonable probability

that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.' . . . A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. . . . [T]he burden of showing that a remand is appropriate is on the claimant.

*Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)).

Here, Plaintiff failed to meet his burden of establishing that remand is warranted because he has not demonstrated "good cause" or that the additional evidence is "material."   As an initial matter, Plaintiff has presented sufficient evidence to demonstrate that Dr. Reardon's report was not available to him prior to the administrative decision.   (*See* Affidavit of Plaintiff's Attorney Eric R. Cole, ECF No. 12-1.)   Despite multiple requests for medical records from the VA, including any Compensation and Pension examinations, Plaintiff did not receive the subject C&P Examination until September 21, 2017.   (*Id.* at ¶¶ 6-15.)   Accordingly, the undersigned agrees that the evidence was "'not . . . available to the claimant at the time of the administrative proceeding.'"   *Ferguson,* 628 F.3d at 276 (quoting *Foster*, 279 F.3d at 357).   Thus, the evidence is new.

Nonetheless, Plaintiff failed to show good cause for failing to notify the ALJ of the existence of the C&P Examination before the ALJ issued his decision.   20 C.F.R. § 404.1512 provides, in relevant part:

[The claimant] must inform [the Commissioner] about or submit all evidence known to [the claimant] that relates to whether or not [the claimant is] blind or disabled…[t]his duty is ongoing and requires [the claimant] to disclose any additional related evidence about which [the claimant] become aware.

20 C.F.R. § 404.1512(a)(1).   It is "clearly not good cause" when a claimant knows of additional evidence and fails to notify the ALJ of its existence.   *See Cline v. Comm'r of*

*Soc. Sec.*, 96 F.3d 146, 149 (6th Cir. 1996) ("[Claimant] cannot benefit from any failure to notify the ALJ at or following the hearing regarding the need to consider additional . . . evidence"). This Court has also found that a claimant's failure to alert the ALJ prior to his decision that the claimant is planning to undergo medical tests, is awaiting results of those test, or that the results are available demonstrates a lack of good cause. *See Gildow v. Acting Comm'r of Soc. Sec.,* No. 2:15-CV-2558, 2016 WL 3876520, at *6 (S.D. Ohio July 18, 2016).

Here, Plaintiff knew of the existence of the "new" evidence, *i.e.* the C&P Examination, before the ALJ even held a hearing. The C&P Examination was conducted on August 15, 2016, and the hearing was held on April 14, 2017. Although Plaintiff did not physically receive a copy of the C&P Examination from the VA until September 21, 2017, he knew of the existence of it well in advance of the hearing and the ALJ's decision. Plaintiff did not alert the ALJ to the existence of this evidence or seek to have the record remain open until the evidence was acquired from the VA. Accordingly, the undersigned finds that Plaintiff has not shown good cause for failing to submit the evidence to the ALJ. *See Gildow*, 2016 WL 3876520, at *6 ("Since Plaintiff apparently believed the walk test evidence was vital to her claim but did not notify the ALJ that she wished to submit this evidence, she has failed to show good cause to excuse the failure to present this evidence in the proceedings").

Even if the undersigned deemed the good cause standard satisfied, Plaintiff fails to demonstrate that the evidence was material. Plaintiff contends that the C&P Examination was material because it "contained important mental health evidence from a VA examination during

the relevant time period that supported the findings of the treating psychologist [Dr. Stevenson]." (Pl.'s Mot. to Remand at 8, ECF No. 12.)   According to Plaintiff, the findings from the VA examination "were consistent with the limitations opined by treating psychologist Dr. Stevenson, and refuted the ALJ's claims that Dr. Stevenson's opinions were not supported by the record." (*Id.*)   The Appeals Council considered the C&P Examination, found that Plaintiff failed to "show a reasonable probability that it would change the outcome of the decision," and declined to review the ALJ's decision.   (R. at 1-6.)

The undersigned is not persuaded that the C&P Examination would have changed the outcome of the case or the weight afforded to Dr. Stevenson's opinion.   The ALJ expressly considered abnormal symptoms similar to those noted in Dr. Reardon's report, and found that, on balance, Plaintiff's treatment records contained mostly normal findings.   (R. at 241-42.) Indeed, when considering the record as a whole, including the largely normal mental status findings throughout Plaintiff's treatment records (*see, e.g.*, R. at 525, 541-42, 546-47, 557, 569-70, 693, 702, 715-16, 718, 724, 726, 729, 741, 743, 746, 753-54, 769, 774, 791-92, 796-97, 799, 808, 811, 821, 940), it is not likely that the ALJ would have afforded greater weight to Dr. Stevenson's opinions based on the fact that Dr. Reardon agreed with them.   Plaintiff himself acknowledges the lack of mental health evidence in the record supporting Dr. Stevenson's opinions.   (Pl.'s Mot. to Remand at 9-10, ECF No. 12.)   Accordingly, the undersigned in not persuaded that a reasonable probability exists that the ALJ would reach a different outcome if he were to consider Dr. Reardon's report.

For the foregoing reasons, a remand under Sentence Six of 42 U.S.C. § 405(g) is not warranted, and the undersigned **RECOMMENDS** that Plaintiff's Motion to Remand be **DENIED**.

## VI.     DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.   Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.   It is further **RECOMMENDED** that the Court **DENY** Plaintiff's Motion to Remand under Sentence Six of 42 U.S.C. § 405(g).

## VII.     PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).   A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.   Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.   28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


 /s/ *Chelsey M. Vascura*          
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE